ORIGINAL

FILED

08 JUL 31 PM 2:41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

1 | JOHN M. MCCOY III, Cal. Bar No. 166244
E-mail: mccoyj@sec.gov
2 | FINOLA H. MANVELIAN, Cal. Bar No. 180681
Email: manvelianf@sec.gov
3 | JESSICA R. PUATHASNANON, Cal. Bar No. 208074
E-mail: puathasnanonj@sec.gov
4 | WILLIAM G. BERRY, Cal. Bar No. 206348
E-mail: berryw@sec.gov
5
6 | Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
7 | Andrew G. Petillon, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
8 | Los Angeles, California 90036-3648
Telephone: (323) 965-3998
9 | Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

  vs.

JERRY L. BURDICK,

      Defendant.

Case No. '08 CV 1390 JAH JMA

**COMPLAINT FOR VIOLATIONS
OF THE FEDERAL SECURITIES
LAWS**

1    Plaintiff Securities and Exchange Commission (the "Commission") alleges
2  as follows:

### JURISDICTION AND VENUE

4    1.    This Court has jurisdiction over this action pursuant to Sections 20(b),
5  20(d)(1), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C.
6  §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e), and 27
7  of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),
8  78u(d)(3)(A), 78u(e) and 78aa.  Defendant has directly or indirectly made use of
9  the means or instrumentalities of interstate commerce, of the mails, or of the
10  facilities of a national securities exchange in connection with the transactions, acts,
11  practices and courses of business alleged in this Complaint.

12    2.    Venue is proper in this district pursuant to Section 22(a) of the
13  Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C.
14  § 78aa, because defendant resided within this district during the relevant time
15  period and certain of the transactions, acts, practices and courses of conduct
16  constituting violations of the laws alleged in this Complaint occurred within this
17  district.

### SUMMARY

19    3.    This case involves financial fraud at SeraCare Life Sciences, Inc.
20  ("SeraCare") by its former director and interim chief financial officer, Jerry L.
21  Burdick ("Burdick").

22    4.    SeraCare was based in Oceanside, California during the relevant time
23  period and operates as a supplier and manufacturer of biological products (such as
24  blood and plasma) for the biotechnology and pharmaceutical industry.

25    5.    SeraCare misstated its financial statements by inflating income before
26  taxes for the second and third quarters of fiscal year 2005 by 20% and 17%,
27  respectively, as a result of Burdick's improper release of general inventory
28  reserves.

6.     Following a major acquisition by SeraCare in September 2004, Burdick created a general inventory reserve account in connection with acquired inventory. Burdick manipulated these general inventory reserves in the second and third quarters of 2005, causing SeraCare's net income before taxes to be inflated by approximately 20% in the second quarter and about 17% in the third quarter of 2005, as reported in its Form 10-Q for the second quarter ended March 31, 2005 ("SeraCare's 2005 Second Quarter Form 10-Q") and in its Form 10-Q for the third quarter ended June 30, 2005 ("SeraCare's 2005 Third Quarter Form 10-Q").

7.     The misleading financial statements from SeraCare's 2005 Second Quarter Form 10-Q were also included in a Form S-1 registration statement filed by SeraCare on May 11, 2005 in connection with the offering of three million shares of SeraCare's common stock.

8.     As SeraCare's interim chief financial officer, Burdick signed and certified SeraCare's 2005 Second Quarter Form 10-Q and was substantially involved in the preparation and filing of SeraCare's 2005 Third Quarter Form 10-Q. Burdick knew, or should have known, that both filings were materially misleading.

9.     Burdick also made, or caused to be made, material misrepresentations to SeraCare's auditors during the 2005 audit. First, he created and backdated a letter that was given to the auditors as support for recognizing revenue on an almost $1 million sale before the close of the 2005 fiscal year. Second, during the same audit, Burdick provided SeraCare's auditors with an increased inventory valuation without any documented or verifiable support.

10.     Burdick aided and abetted SeraCare's uncharged violations of Section 13(a) and 13(b)(2)(A)of the Exchange Act and Rules 12b-20 and 13a-13 thereunder. Burdick also violated Rules 13a-14, 13b2-1, and 13b2-2 of the Exchange Act and Section 17(a)(2) and (3) of the Securities Act.

//

**DEFENDANT**

11.    Defendant Jerry L. Burdick is a resident of Westlake Village, California.  Burdick served as a director on SeraCare's board until his resignation in May 2007.  He also served as SeraCare's interim chief financial officer from February 2005 through May 2005.  Burdick obtained his CPA license in California in 1964 and his license lapsed in 1997.

**RELEVANT ENTITY**

12.    SeraCare Life Sciences, Inc. is a Delaware corporation that is currently based in West Bridgewater, Massachusetts.  During the relevant time period, SeraCare's principal headquarters were in Oceanside, California and its common stock was registered pursuant to Section 12(g) of the Exchange Act and listed on the Nasdaq National Market.  From at least 2004 through at least March 2006, SeraCare's fiscal year ended on September 30.

**FACTUAL ALLEGATIONS**

**A.    Burdick's Manipulation of SeraCare's Inventory Reserves**

13.    Approximately two weeks before the end of fiscal year 2004, SeraCare acquired substantially all of the assets of Boston Biomedica, Inc. ("BBI") for about $30 million.

14.    When SeraCare acquired BBI in September 2004, it also acquired BBI inventory valued at almost $5 million.  This valuation of inventory was premised on BBI's gross inventory at the time of the acquisition date reduced by its historical inventory reserve.

15.    Following the BBI acquisition, Burdick added an additional reserve amount of almost $2.5 million to the historical reserve for BBI's inventory, making the net inventory balance for BBI at the time of acquisition about $2.5 million.  Approximately $1 million of this additional inventory reserve booked by Burdick was a general reserve for unspecified inventory items.  Burdick subsequently directed the unsubstantiated release of these general inventory reserves in the

-4-

1  second and third quarters of fiscal year 2005 in violation of generally accepted

2  accounting principles ("GAAP").

3       16.    During the first quarter of fiscal year 2005, the finance director of

4  SeraCare's BBI division manually allocated over $283,000 of these additional

5  reserves to specific inventory items.  In approximately March 2005, at Burdick's

6  direction, the BBI finance director took steps to automate the process so that the

7  current inventory reserve would be automatically applied to the associated specific

8  inventory line item.  Once this allocation of inventory reserve was accomplished,

9  the approximate $1 million of general inventory reserves that Burdick had created

10  remained on the books and unallocated to specific inventory items.

11       17.    Burdick directed that approximately half of these general inventory

12  reserves be credited in the second quarter of SeraCare's 2005 fiscal year.  As a

13  result, Burdick reduced SeraCare's cost of goods sold, thereby improving

14  SeraCare's income before taxes by approximately 20.4% in the second quarter of

15  fiscal year 2005.

16       18.    Burdick directed that the remaining $459,000 in general inventory

17  reserves be credited in the third quarter.  As a result of this credit directed by

18  Burdick, SeraCare's cost of goods sold was reduced and its income before taxes

19  was inflated by approximately 17.3% in the third quarter of fiscal year 2005.

20       19.    Burdick was substantially involved in preparing and reviewing

21  SeraCare's Forms 10-Q for the second and third quarters of 2005 before they were

22  filed.  As SeraCare's interim CFO, Burdick approved, signed, and certified

23  SeraCare's 2005 Second Quarter Form 10-Q that was filed on June 30, 2005.

24       20.    SeraCare's 2005 Second Quarter Form 10-Q and SeraCare's 2005

25  Third Quarter Form 10-Q were materially misleading because both filings reported

26  net income before taxes that was inflated as a result of Burdick's manipulation of

27  the general inventory reserve accounts that he created.  This misleading financial

28  information was also reported in a Form S-1 registration statement filed by

-5-

1     SeraCare on May 10, 2005, which Burdick signed as SeraCare's acting CFO.

2     **B.**     **Burdick's Misleading Statements To Auditors**

3        **1.**     **Misrepresentations related to $1 million sale in September 2005**

4        21.     In September 2002, SeraCare, Wyeth Pharmaceuticals, and Instituto

5 Grifols entered into a supply agreement, whereby Grifols agreed to supply certain

6 product to Wyeth, with SeraCare serving as the distributor. Subsequently, in

7 January 2005, Wyeth licensed a Swedish company, Biovitrum AB, to manufacture

8 product with supplies from Grifols to be distributed by SeraCare under the 2002

9 supply agreement.

10        22.     In June 2005, Biovitrum ordered approximately $956,000 of product

11 from Grifols through SeraCare, which served as the distributor in accordance with

12 the contractual agreements between the parties. Accordingly, Biovitrum placed the

13 order with SeraCare, requesting a November 1, 2005 delivery date.

14        23.     Pursuant to the underlying contractual agreements between the

15 parties, the sale was made under an "Ex Works" arrangement. Ex Works refers to

16 a set of sales terms in which the seller is only required to make the product

17 available and the buyer is responsible for handling the subsequent delivery. The

18 seller, however, is required under Ex Works to notify the buyer when and where

19 the product will be made available.

20        24.     To comply with the Ex Works terms, SeraCare was required to notify

21 Biovitrum when and where the Grifols product would be ready for delivery.

22 Accordingly, following the June 2005 purchase order, representatives from

23 SeraCare and Biovitrum engaged in discussions regarding the logistics required for

24 the delivery of the Grifols product to Biovitrum. SeraCare's lead sales

25 representative for the deal left SeraCare shortly thereafter and the Biovitrum sale

26 was assigned to a newly promoted sales manager at SeraCare. Crowley directed

27 the new sales manager to make the product available for delivery before the end of

28 SeraCare's fiscal year on September 30, 2005.

25.     No agreement, however, was ever made between SeraCare and Biovitrum to change the timing of the delivery.  In fact, Grifols expressly told SeraCare that the product may not be available until October 2005.

26.     By the end of the day on September 30, 2005, SeraCare had not provided notice to Biovitrum as to when and where the product would be made available or even whether the product was ready for pick-up and delivery.  Instead, on September 30, 2005, SeraCare's sales staff was busy trying to confirm how the product would be delivered from Grifols to Biovitrum, even though delivery was not SeraCare's responsibility under the Ex Works provision.

27.     In spite of the fact that the conditions for a sale had not been met under Ex Works, SeraCare's finance personnel provided documentation to SeraCare's auditors that purported to support booking the revenue from the sale in fiscal year 2005.

28.     The documentation provided to the auditors to support the Biovitrum revenue included a letter that Burdick created on October 4, 2005, which he directed the new sales manager to sign.  Burdick dated the letter September 29, 2005, addressed it to Biovitrum, and included a representation that the product was available for delivery on September 27, 2005.

29.     Burdick knew, or was reckless in not knowing, that this representation was false because, according to the new sales manager who signed the letter at Burdick's direction, Burdick was informed that on September 30, 2005, SeraCare's sales staff was still working to make delivery arrangements for the product.

30.     Burdick also knew, or was reckless in not knowing, that the backdated letter would be presented to SeraCare's auditors because he was aware that the auditors routinely reviewed such records during their normal audit process. Indeed, during the normal course of the audit, the letter was presented to SeraCare's auditors as support for the sale.

31.     The revenue from the sale accounted for approximately 4% of

-7-

1 SeraCare's net income before taxes for SeraCare's 2005 fiscal year. This inflated

2 revenue was included in a draft Form 10-K that Burdick prepared and provided to

3 the auditors during the year-end audit.

4      **2.     Inflated Valuation of Parvo Inventory**

5      32.     Burdick also made false or misleading representations to SeraCare's

6 auditors regarding at least one inventory item, known as Parvo inventory.

7 Specifically, Burdick provided the auditors with an inventory valuation that was

8 increased by approximately $2.00 per unit without any documented or verifiable

9 support.

10      33.     In connection with the year-end audit, Burdick provided this increased

11 valuation data to SeraCare's auditors as the true and correct valuation for the Parvo

12 inventory.

13      34.     Burdick's inflated inventory valuation was also included in the draft

14 2005 Form 10-K that Burdick prepared and provided to the auditors during the

15 year-end audit.

16      35.     During a weekly meeting between SeraCare's auditors and senior

17 managers on or about December 13, 2005, SeraCare's auditors did not believe that

18 Burdick was able to adequately explain his valuation of the Parvo inventory. The

19 auditors also presented other records that reflected a reduced value. As a result,

20 Burdick and SeraCare's management agreed to an almost $684,000 adjustment to

21 the Parvo inventory value.

22      36.     This downward adjustment represented almost 3% of SeraCare's year-

23 end inventory, reducing by almost 7% SeraCare's net income before taxes as

24 reported by Burdick to the auditors in SeraCare's draft Form 10-K.

25                         **FIRST CLAIM FOR RELIEF**

26              **FRAUD IN THE OFFER OR SALE OF SECURITIES**

27         **Violations of Section 17(a)(2) and (3) of the Securities Act**

28      37.     The Commission realleges and incorporates by reference ¶¶ 1 through

1  36 above.

2      38.    Defendant, by engaging in the conduct described above, directly or

3  indirectly, in the offer or sale of securities by the use of means or instruments of

4  transportation or communication in interstate commerce or by the use of the mails:

5          (a)    obtained money or property by means of untrue statements of a

6                material fact or by omitting to state a material fact necessary in

7                order to make the statements made, in light of the

8                circumstances under which they were made, not misleading;

9                and

10          (b)    engaged in transactions, practices, or courses of business which

11                operated or would operate as a fraud or deceit upon the

12                purchaser.

13      39.    By engaging in the conduct described above, defendant violated, and

14  unless restrained and enjoined will continue to violate, Section 17(a)(2) and (3) of

15  the Securities Act, 15 U.S.C. § 77q(a).

16  ## SECOND CLAIM FOR RELIEF

17  ## VIOLATIONS OF COMMISSION PERIODIC

18  ## REPORTING REQUIREMENTS

19  **Violations of Section 13(a) of the Exchange Act,**

20  **and Rules 12b-20 and 13a-13 thereunder**

21      40.    The Commission realleges and incorporates by reference ¶¶ 1 through

22  36 above.

23      41.    SeraCare violated Section 13(a) of the Exchange Act and Rules 12b-

24  20 and 13a-13 thereunder, by filing with the Commission materially false and

25  misleading quarterly reports on Form 10-Q for the quarters ended March 31, 2005

26  and June 30, 2005.

27      42.    Defendant knowingly provided substantial assistance to SeraCare's

28  violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13

1    thereunder.

2        43.    By engaging in the conduct described above and pursuant to Section

3    20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendant aided and abetted

4    SeraCare's violations, and unless restrained and enjoined will continue to aid and

5    abet violations, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and

6    Rules 12b-20 and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20 and 240.13a-13.

7                        **THIRD CLAIM FOR RELIEF**

8                        **RECORD KEEPING VIOLATIONS**

9            **Violations of Section 13(b)(2)(A) of the Exchange Act**

10               **and Violations of Rule 13b2-1 thereunder**

11        44.    The Commission realleges and incorporates by reference ¶¶ 1 through

12    36 above.

13        45.    SeraCare violated Section 13(b)(2)(A) of the Exchange Act by failing

14    to make or keep books, records and accounts that in reasonable detail accurately

15    and fairly reflected its transactions and disposition of its assets.

16        46.    Defendant knowingly provided substantial assistance to SeraCare's

17    violation of Section 13(b)(2)(A) of the Exchange Act.

18        47.    By engaging in the conduct described above and pursuant to Section

19    20(e) of the Exchange Act, 15 U.S.C. § 78t(e), defendant aided and abetted

20    SeraCare's violations, and unless restrained and enjoined will continue to aid and

21    abet violations, of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. §

22    78m(b)(2)(A).

23        48.    By engaging in the conduct described above, defendant violated

24    Exchange Act Rule 13b2-1 by, directly or indirectly, falsifying or causing to be

25    falsified SeraCare's books, records, and accounts subject to Section 13(b)(2)(A) of

26    the Exchange Act.  Unless restrained and enjoined, Burdick will continue to violate

27    Rule 13b2-1, 17 C.F.R. § 240.13b2-1.

28    //

## FOURTH CLAIM FOR RELIEF

### FALSE CERTIFICATION

#### Violations of Exchange Act Rule 13a-14

49.     The Commission realleges and incorporates by reference ¶¶ 1 through 36 above.

50.     Defendant certified the quarterly report filed by SeraCare on Form 10-Q for the quarter ended March 30, 2005 that, among other things, he reviewed the report and, based on his knowledge, the report (i) did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading and (ii) included financial statements and other financial information which fairly presented, in all material respects, SeraCare's financial condition, results of operations and cash flows.

51.     By engaging in the conduct alleged above, defendant violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13a-14, 17 C.F.R. § 240.13a-14.

## FIFTH CLAIM FOR RELIEF

### FALSE OR MISLEADING STATEMENTS TO ACCOUNTANTS

#### Violations of Exchange Act Rule 13b2-2

52.     The Commission realleges and incorporates by reference ¶¶ 1 through 36 above.

53.     Defendant, directly or indirectly, (i) made, or caused to be made, materially false or misleading statements or (ii) omitted to state, or caused others to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with an audit, review or examination of financial statements or the preparation or filing of a document or report required to be filed with the Commission.

54.  By engaging in the conduct alleged above, defendant violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court:

(a)  Issue findings of fact and conclusions of law that defendant committed the violations alleged and charged herein.

(b)  Issue judgments, in a form consistent with Fed. R. Civ. P. 65(d), permanently enjoining defendant and his agents, servants, employees, attorneys, and those persons in active concert or participation with him, who receive actual notice of the order by personal service or otherwise, from violating Section 17(a)(2) and (3) of the Securities Act and Rules 13a-14, 13b2-1, and 13b2-2 of the Exchange Act, and aiding and abetting violations of Section 13(a) and 13(b)(2)(A) of the Exchange Act and Rules 12b-20 and 13a-13 thereunder.

(c)  Order defendant to pay civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

(d)  Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

(e)  Grant such other and further relief as this Court may determine to be just and necessary.

//
//
//
//

-12-

1    DATED:  July 31, 2008                    Respectfully submitted,

2

3                                             _WILLIAM G. BERRY_

4                                             Attorneys for Plaintiff

5                                             Securities and Exchange Commission

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



≈JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| U.S. SECURITIES AND EXCHANGE COMMISSION | JERRY L. BURDICK |

08 JUL 31 PM 2:40

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** County of Residence of First Listed Plaintiff _____

(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Los Angeles County

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

08 CV 1390 JAH JMA

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William G. Berry, Esq.  (323) 965-3998
U.S. Securities and Exchange Commission

Attorneys (If Known)

David J. Schindler, Esq.
Latham & Watkins, LLP

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government
       Plaintiff

☐ 3  Federal Question
       (U.S. Government Not a Party)

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                       and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 77q(a), 15 U.S.C. § 78m(a), 15 U.S.C. § 78m(b)(2)(A), 17 C.F.R. §§ 240.12b-20, 240.13a-13,

Brief description of cause:
The complaint alleges violations of the antifraud provisions of the federal securities laws.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
  UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE

7-31-08

SIGNATURE OF ATTORNEY OF RECORD

*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



JS 44 Reverse (Rev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**        Example:        U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.